**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RUTH C. CHAREST and
JENNIFER N. KUFRIN,

    Plaintiffs,

v.                                              CASE NO:  8:16-CV-2048-T-30JSS

SUNNY-AAKASH, LLC, agent of Holiday
Inn Express Hotel & Suites Spring Hill, and
JAYPRAKASH PANJABI, individually, also
know as Jay Panjabi,

    Defendants.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendants' Dispositive Motion to Dismiss Amended Complaint (Dkt. 10) and Plaintiffs' Response in Opposition (Dkt. 14). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.

## BACKGROUND

This is an action brought by Plaintiffs Ruth Charest and Jennifer Kufrin against their former employer, Sunny-Aakash, LLC, that owns and operates a Holiday Inn Express Hotel in Spring Hill, Florida (hereafter referred to as "Holiday Inn"), and against Jayprakash Panjabi, Holiday Inn's general manager during the relevant time. Panjabi is also an officer or director of the Holiday Inn. Charest and Kufrin allege the following claims based on

Panjabi's treatment of them during their employment: two claims under 42 U.S.C. Section 1981 for racial discrimination and retaliation against both Defendants (Counts I and II); a claim for violation of the Florida Whistleblower Act ("FWA") against only Holiday Inn (Count III); a claim for Intentional Infliction of Emotional Distress ("IIED") against both Defendants (Count IV); and a claim for coercion under Chapter 796.09, Florida Statutes against both Defendants (Count V).

Defendants move to dismiss Plaintiff's amended complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The facts, as alleged in the amended complaint, now follow with respect to each Plaintiff.

**Plaintiff Ruth Charest:**

In April of 2013, Panjabi, an Indian male, hired Charest, a Filipino female, to work in the Holiday Inn's housekeeping department. Charest alleges that she was subjected to the supervision, authority, and control of Panjabi during her employment. Throughout her employment at Holiday Inn, Panjabi threatened her that if she did not have sex with him she would lose everything: her job, her family, her husband, and she would be sent back to the Philippines. Panjabi frequently told Charest that she should be willing to have sex with him because she was Filipino. This coercion and manipulation resulted in Charest having sex with Panjabi, his friends, and other employees.

Charest alleges that Panjabi frequently offered her money to engage in sex with him and others. For example, in October of 2015, Panjabi offered to pay Charest and another

female named Alex for group sex. On other occasions, Panjabi threatened Charest with termination if she did not have sex with him.

In December of 2015, Panjabi demanded that Charest and another female engage in group sex. Panjabi threatened the women that if they ever told anyone they would "be in trouble." Panjabi frequently threatened Charest that he could get her in trouble because she was "poor," "trash," "foreign," and that he was "rich and powerful."

Panjabi coerced Charest to have sex with a man named "Kevin" who ran another Holiday Inn Express. Panjabi told Charest that because she was Filipino she should be willing to provide sex to Indian men who he said were "superior."

In March of 2016, Panjabi demanded that Charest and Plaintiff Jennifer Kufrin have sex with each other and then with him.

In May of 2016, Panjabi demanded that Charest "give him a blow job for his birthday." Charest rejected the demand and told Panjabi that she was tired of being exploited, abused, and threatened. On May 27, 2016, Charest again refused to have sex with Panjabi. Immediately thereafter, Panjabi terminated Charest's employment.

**Plaintiff Jennifer Kufrin:**

In June of 2015, Panjabi hired Kufrin to work at the Holiday Inn's breakfast bar. Kufrin was subject to the supervision, authority, and control of Panjabi. During her employment, Panjabi constantly touched Kufrin and made comments about her body. Panjabi told Kufrin repeatedly that because she was "white trash" from Spring Hill she should provide him with sexual favors. Thereafter, Panjabi frequently told Kufrin to go to

an empty hotel room and wait for him. When she arrived, Panjabi would pull down his pants, point to his penis and say "make it hard!" If Kufrin refused, Panjabi grabbed her and pushed her down.

On August 11, 2015, Panjabi called Kufrin to his office. He told her that unless she "went up to a room" he did not "think he could keep her around." He repeated that unless she met him in a vacant hotel room for sex she would be replaced. On other occasions, Panjabi threatened to fire Kufrin if she did not meet him in an empty hotel room and engage in intercourse or perform oral sex. On these occasions, Panjabi coerced and manipulated Kufrin into having sex with him by threatening her job.

On the occasions when Kufrin refused Panjabi's sexual demands, he became angry and told Kufrin that "white women are lazy, stupid and garbage." He frequently told Kufrin that he and his Indian investors would dominate the "white trash" who lived in Spring Hill. He said, "I can do what I want because I have power and money." Panjabi told Kufrin repeatedly that she was "white trash" and that "white women" from Spring Hill were only good for providing sex to "powerful men." Panjabi threatened to terminate Kufrin's employment if she did not have sex with him.

In March of 2016, Panjabi demanded that Kufrin and Charest have sex with each other and then with him. Thereafter, Kufrin rejected Panjabi's future demands for sex.

In May of 2016, Panjabi demanded that Kufrin meet him in a hotel room "for a blow job." Kufrin rejected the sexual demand and Panjabi fired her later that day.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**DISCUSSION**

**I.     Plaintiffs' Section 1981 Claims (Counts I & II)**

Section 1981 provides all persons the same right to "make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). For purposes of the statute, the term "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 prohibits material adverse actions in private employment based on the employee's race. *See CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 450-51 (2008). Notably, section 1981 prohibits race discrimination against whites as well as nonwhites. *See McDonald v. Santa Fe Trail Transp.,*

427 U.S. 273, 287 (1976). Section 1981 also prohibits an employer from retaliating against an employee for opposing or complaining about conduct that violates section 1981's substantive prohibition against race discrimination. *See CBOCS West,* 553 U.S. at 446; *Chapter 7 Trustee v. Gate Gourmet, Inc.,* 683 F.3d 1249, 1257-58 (11th Cir. 2012); *Bryant v. Jones,* 575 F.3d 1281, 1301 (11th Cir. 2009).

Plaintiffs allege claims for racially disparate treatment in violation of section 1981 (Count I) and retaliation under section 1981 (Count II). Defendants move to dismiss both claims on the ground that the alleged facts are insufficient to state a claim.[1] The Court grants the motion with respect to Count II. As for Count I, Plaintiffs allege numerous facts that, if true, demonstrate that Panjabi subjected Plaintiffs to adverse actions based on their race. Plaintiffs contend that Panjabi viewed his race, Indian, as superior to their races, Filipino (Plaintiff Charest) and White (Plaintiff Kufrin) and, as a result, singled them out as sexual targets and willing providers of sex. This is sufficient at this stage.

With respect to Count II, Plaintiffs fail to allege that their termination was related to any complaints they made about *race* discrimination. Plaintiffs allege that Panjabi terminated them after they refused to engage in sexual acts with him. This may establish that he retaliated against them for their failure to engage in sex acts; it does not establish that their termination was related to any complaint they made about race discrimination. Moreover,

---

[1] Defendants also argue that section 1981 does not apply to national origin claims. This argument is moot because Plaintiffs concede that their claims are premised on their race, not their national origin.

Plaintiffs do not allege that they engaged in protective activity. Plaintiffs do not state any facts related to complaints they made or opposition they asserted related to race discrimination. Rather, they allege in a conclusory fashion that they "complained to [Panjabi] that his conduct was illegal sexual harassment." (Dkt. 8). Accordingly, Count II will be dismissed.

Although the Court believes that any further amendment of Plaintiffs' section 1981 retaliation claim would be futile because Plaintiffs have previously amended their complaint, the Court will provide Plaintiffs a final opportunity to amend Count II. Plaintiffs are reminded of their obligations under Rule 11 of the Federal Rules of Civil Procedure and should amend Count II only if they have a good faith basis.

## II.  Plaintiffs' FWA Claims (Count III)

In order to establish a prima facie case under the FWA, Plaintiffs must establish that they: 1) "objected to or refused to participate in any illegal activity, policy or practice of" Holiday Inn; 2) "suffered an adverse employment action"; and 3) "the adverse employment action was causally linked to [their] objection or refusal." *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (citing *Gleason v. Roche Labs., Inc.*, 745 F. Supp. 2d 1262, 1270 (M.D. Fla. 2010)). To establish the first element, Plaintiffs must allege that they "objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer."

*McIntyre v. Delhaize Am., Inc.*, No. 8:07-cv-2370-T-30TBM, 2009 WL 1039557, at *3 (M.D. Fla. Apr.17, 2009), *aff'd*, 403 F. App'x 448 (11th Cir. 2010).

Defendants move to dismiss Plaintiffs' FWA claim on two grounds: Plaintiffs do not allege that they engaged in statutorily-protective activity and Plaintiffs do not allege that they objected to an activity, policy, or practice of Holiday Inn. The Court agrees that Plaintiffs' FWA claim is insufficient under Rule 12(b)(6). Plaintiffs allege, in a conclusory fashion, that they complained to Panjabi that his conduct was illegal. This is insufficient to establish the first element of the prima facie case because Plaintiffs do not allege an illegal activity of Holiday Inn. Also, Plaintiffs do not allege that Holiday Inn ratified Panjabi's conduct.

It appears that Plaintiffs are attempting to claim that Panjabi's illegal activity occurred within the scope of his employment. But the allegations fail to impute liability to Holiday Inn as a matter of law because, under the FWA, an employer is not strictly liable for the intentional illegal actions of its employees unless the intentional illegal activity was committed with the purpose of benefitting the employer. *See Ruiz v. Aerorep Grp. Corp.*, 941 So. 2d 505, 507 (Fla. 3d DCA 2006) (noting that the trial court correctly dismissed the plaintiff's FWA claim after concluding that the employer was not responsible for the employee's intentional tort where the allegations made clear that the tort was not committed with the purpose of benefitting the employer's interests); *Sussan v. Nova Se. Univ.,* 723 So. 2d 933, 934 (Fla. 4th DCA 1999) (affirming dismissal of an action brought under the FWA where the complaint failed to allege unlawful activity on the part of the employer); *see also Juarez v. New Branch Corp.*, 67 So. 3d 1159, 1161-62 (Fla. 3d DCA 2011). Plaintiffs do not

allege that Panjabi's repeated verbal and physical harassment against them was for Holiday Inn's benefit.  Accordingly, Plaintiffs' FWA claim must be dismissed.

Plaintiffs' FWA claim is subject to dismissal for another reason: even if the Court were to assume that Plaintiffs established the first element of a prima facie case under the FWA, Plaintiffs fail to allege facts establishing the third element, i.e., that the adverse employment action was causally linked to their objection or refusal.  As the Court previously explained with respect to Plaintiffs' section 1981 retaliation claim, Plaintiffs allege that they were terminated because they refused to engage in further sexual acts with Panjabi. Plaintiffs' allegations therefore negate any causal link between their purported objection to illegal activity and their termination.  Accordingly, the Court grants Defendants' motion with respect to Plaintiffs' FWA claim.  The Court dismisses the FWA claim with prejudice because the allegations make clear that any further amendment of this claim would be futile.

### III.  Plaintiffs' IIED Claims (Count IV)

"To state a claim for [IIED] under Florida law," a plaintiff must show "(1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiffs severe emotional distress." *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.,* 912 F. Supp. 1549, 1557 (S.D. Fla. 1996).  "To qualify as 'extreme and outrageous,' defendant's conduct must have 'been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Pierre v. City*

*of Miramar, Fla., Inc.,* 537 F. App'x 821, 827 (11th Cir. 2013) (quoting *Metro. Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278-79 (Fla. 1985)).

Defendants argue that Panjabi's conduct, as alleged, was not sufficiently extreme and outrageous. The Court disagrees. Although Defendants are correct that courts are hesitant to allow IIED claims to proceed when they are premised on workplace harassment, federal courts interpreting Florida law have allowed claims for intentional infliction of emotional distress in the workplace to go forward in circumstances involving repeated verbal abuse coupled with repeated offensive physical contact. *See Vernon,* 912 F. Supp. at 1559 ("The touchstone of these cases is the presence of relentless physical, as well as verbal, harassment. It is the element of offensive, non-negligible physical contact that, when coupled with persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute conduct of sufficient outrageousness to support a claim for intentional infliction of emotional distress."); *Urquiola v. Linen Supermarket, Inc.*, No. 94-14-CIV-ORL-19, 1995 WL 266582, at *4 (M.D. Fla. Mar. 23, 1995) (denying motion to dismiss after noting that the allegations "went beyond mere harassment or verbal abuse" because "the alleged conduct included constant sexually explicit, demeaning and vulgar language and repeated acts of physical abuse."); *Albert v. Nat'l Cash Register Co.,* 874 F. Supp. 1328, 1331 (S.D. Fla. 1994) (denying a motion to dismiss where plaintiff's allegations established a "pervasive pattern of constant harassment").

Plaintiffs allege a relentless pattern of threats, harassment, and inappropriate sexual behavior on the part of Panjabi. As explained in detail above, Panjabi frequently threatened

Plaintiffs, demeaned Plaintiffs, and demanded that Plaintiffs engage in sexual acts with him and others in order to retain their employment at Holiday Inn.  Panjabi's conduct occurred during the entirety of Plaintiffs' employment.  Accordingly, the Court denies Defendants' motion with respect to Plaintiffs' IIED claims to the extent that they argue that Panjabi's conduct was not sufficiently severe or outrageous to state a claim.  However, the Court grants Defendants' motion to the extent that Holiday Inn argues that Panjabi's conduct cannot establish an IIED claim against Holiday Inn.  Plaintiffs do not allege that Panjabi was acting to advance Holiday Inn's interests when he subjected Plaintiffs to the outrageous conduct.  Plaintiffs also do not allege that Holiday Inn ratified Panjabi's conduct.  Nor do they allege that Holiday Inn was placed on any notice of Panjabi's conduct.  The IIED claim is therefore dismissed with prejudice as to Holiday Inn.

**IV.  Plaintiffs' Coercion Claims (Count V)**

In Count V, Plaintiffs allege a civil claim for coercion into prostitution under Fla. Stat. § 796.09 against Defendants.  Section 796.09 provides, in relevant part:

(1) A person has a cause of action for compensatory and punitive damages against:
    (a)    A person who coerced that person into prostitution;
    (b)    A person who coerces that person to remain in prostitution; or
    (c)    A person who uses coercion to collect or receive any part of that person's earnings derived from prostitution.

Defendants argue that section 796.09 applies only to prostitutes.  The Court agrees.  *See Myers v. Central Fla. Invs., Inc.*, No. 6:04-cv-01542-JA-DAB (M.D. Fla. Sep. 1, 2005) ("As Plaintiff has not alleged that any Defendant coerced her into engaging in prostitution, this

count fails to state a cause of action, and the motion to dismiss it should be granted."); *see also Balas v. Ruzzo*, 703 So. 2d 1076, 1078-79 (Fla. 5th DCA 1998) (noting that section 796.09 was "designed to encourage prostitutes to sue their pimps" and that it "provides a person with a civil cause of action for compensatory and punitive damages against anyone who coerces that person into prostitution, who coerces that person to remain in prostitution, or who uses coercion to collect or receive any part of that person's earnings derived from prostitution."). Plaintiffs' allegations make clear that any further amendment of this claim would be futile because the statute applies only to prostitutes and their pimps. *See Sasser v. Clinic Pulmonary and Infectious Diseases, P.A.*, No. 3:02-cv-1144-J-20HTS (M.D. Fla. Mar. 7, 2003) (noting that the legislative intent of section 796.09 "was not to provide a cause of action in employment cases."). Accordingly, Count V is dismissed with prejudice.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Dispositive Motion to Dismiss Amended Complaint (Dkt. 10) is GRANTED in part and DENIED in part as stated herein.

2. Count I remains in this case.

3. Count II is dismissed without prejudice to Plaintiffs to amend Count II within fourteen (14) days of this Order.

4. Count III is dismissed with prejudice.

5. Count IV is dismissed with prejudice as to Defendant Holiday Inn. Count IV remains in this case as to Defendant Panjabi.

      6.      Count V is dismissed with prejudice.

**DONE** and **ORDERED** in Tampa, Florida on September 30, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to</u>:
Counsel/Parties of Record

*S:\Even\2016\16-cv-2048 mtd 10.wpd*