UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH C. CHAREST and
JENNIFER N. KUFRIN,

      Plaintiff,                                    Case No.  8:16-cv-2048-T-30JSS

v.

SUNNY-AAKASH, LLC, d/b/a HOLIDAY  INN
EXPRESS HOTEL & SUITES SPRING HILL,
and JAYPRAKASH PANJABI, a/k/a
JAY PANJABI, individually,

      Defendants.
_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Ruth C. Charest and Jennifer N. Kufrin (hereinafter referred to as "Plaintiffs" or "Plaintiff Charest" or "Plaintiff Kufrin"), sue the Defendants, Sunny-Aakash, LLC, d/b/a Holiday Inn Express Hotel & Suites Spring Hill, (hereinafter referred to as the "Corporate Defendant") and Jayprakash Panjabi a/k/a Jay Panjabi (hereinafter referred to as "Defendant Panjabi") and allege as follows:

1.      This is an action brought under 42 U.S.C. §1981, Chapter 760, The Florida Civil Rights Act of 1992, §760.10 et seq ("FCRA") and for Intentional Infliction of Emotional Distress.  This Court has jurisdiction of Plaintiff's claims pursuant to Title 28 U.S.C. Section 1331, and the pendent jurisdiction of the Court.

2.      At all times material to this action, Plaintiffs were residents of Hernando County, Florida.

3.      The Corporate Defendant, Sunny-Aakash, LLC, d/b/a Holiday Inn Express Hotel & Suites Spring Hill, is a Florida limited liability corporation which does business in the State of

Florida with its principal place of business located at 3528 Commercial Way, Spring Hill, Florida 34606.

4.    The Corporate Defendant was an "employer" of the Plaintiffs as defined by Section 1981 and the FCRA, §760.02(7).

5.    At all material times Defendant Panjabi, of Indian descent, was a resident of Pasco County, Florida.  Defendant Panjabi is an Officer or Director of the Corporate Defendant and was employed as its General Manager.

6.    Plaintiff Charest is a female of Filipino descent and national origin.

7.    Plaintiff Kufrin is a white female.

### GENERAL ALLEGATIONS

8.    In April of 2013, Plaintiff Charest was hired by the Corporate Defendant in the housekeeping department.  Throughout Plaintiff Charest's employment, Defendant Panjabi made constant references to her race, sex and national origin.  In June of 2015, Plaintiff Kufrin was hired by the Corporate Defendant at the breakfast bar.  Throughout Plaintiff Kufrin's employment, Defendant Panjabi made constant references to her race and sex.

9.    During Plaintiffs' employment they were subject to the direction, control, supervision and authority of the Corporate Defendant's General Manager, Defendant Panjabi. Over the course of Plaintiffs' employment, Defendant Panjabi coerced, threatened, manipulated and economically forced Plaintiffs into performing sexual acts with him, his friends, each other and ultimately in group sex with him.  Defendant Panjabi identified the race of Plaintiffs as a factor that made them suitable sexual targets.

10.    After Plaintiffs started working for the Corporate Defendant, Defendant Panjabi initiated a scheme to coerce, manipulate and force Plaintiffs into performing sexual acts with him

2

and others. Defendant Panjabi has done this with other female employees of the Corporate Defendant.

11. In the beginning of each of the Plaintiffs' employment Defendant Panjabi at first engaged in sexual and racial harassment of the Plaintiffs.

12. Defendant Panjabi demanded that Plaintiffs engage in sexual activity with him or threatened that they would be terminated.

13. Defendant Panjabi threatened Plaintiff Charest that if she did not engage in sexual activity with him including, but not limited to, sexual intercourse and oral sex, she would lose everything: her job, her family, her husband and be sent back to the Phillipines. Defendant Panjabi knew Plaintiff Charest was vulnerable since she routinely sent money back to her family in the Philippines. Defendant Panjabi frequently referred to Plaintiff Charest's race and said that she should be willing to provide sex because she was Filipino.

14. In approximately October of 2015, Defendant Panjabi offered money to Plaintiff Charest and another vulnerable female employee named Alex to have group sex with him. Plaintiff Charest and Alex rejected the proposal.

15. On another occasion, Defendant Panjabi required that Plaintiff Charest accompany him to the home of his brother, Harikirishnala Panjabikaroda, an officer of the Corporate Defendant. Once they arrived, Defendant Panjabi forced Plaintiff Charest into the home and demanded that she have sex with him.

16. In December of 2015, Defendant Panjabi required that Plaintiff Charest and another female engage in group sex with him, including sexual intercourse and oral sex. After the sex, Defendant Panjabi threatened the women that if they ever told anyone they would "be in trouble." Indeed, Defendant Panjabi frequently threatened the Plaintiffs and other female

3

subordinates that he could get them in trouble because they were "poor," "trash" or "foreign" and that he was "rich and powerful."

17.     In June of 2015, after Plaintiff Kufrin was hired, Defendant Panjabi subjected her to relentless sexual harassment, including unwanted touching and comments about her body and sex. Defendant Panjabi told Plaintiff Kufrin repeatedly that because she was "white trash" from Spring Hill she should provide him with sexual favors.

18.     Defendant Panjabi constantly told Plaintiff Kufrin to go to certain empty hotel rooms and wait for him. Once he arrived, Defendant Panjabi would pull down his pants to his ankles, point at his penis and say "make it hard!" If Plaintiff Kufrin refused, Defendant Panjabi would grab her and push her down. As to Plaintiff Charest, Defendant Panjabi also forced or threw her down. He threatened her that he could cause her to lose her family and she would be "sent back" to the Philippines if she did not provide him with oral sex. Defendant Panjabi constantly humiliated the Plaintiffs by threatening that he could get them in trouble if they refused since he had "the Power and Money." Defendant Panjabi told Plaintiff Charest that because she was "Filipino" she should be willing to have sex with him.

19.     On August 11, 2015, Defendant Panjabi called Plaintiff Kufrin into his office. He told Plaintiff Kufrin that unless she "went up to a room" he did not "think he could keep her around." Defendant Panjabi told Plaintiff Kufrin that unless she met him in a vacant room she would be replaced. On several occasions, Defendant Panjabi threatened Plaintiff Kufrin with termination if she did not meet him in an empty room and engage in intercourse or perform oral sex.

20.     Defendant Panjabi coerced Plaintiff Charest into having sex with a man named "Kevin" who apparently ran another Holiday Inn Express. Defendant Panjabi told Plaintiff

4

Charest because she was Filipino she should be willing to provide sex to Indian men who he said "were superior." Once discovery is conducted in this case and the true identity of "Kevin" is discovered, he and others will be added as Defendants to this lawsuit.

21. Defendant Panjabi used his position as the Corporate Defendant's General Manager and as Plaintiffs' sole manager to coerce them into elicit sexual activity and performances. Defendant Panjabi repeatedly threatened Plaintiffs' jobs with the Corporate Defendant unless they agreed to submit to his sex motivated demands that became increasingly bizarre and perverted over time.

22. Defendant Panjabi engaged in a pattern and practice of using the Corporate Defendant as a venue for coercing and manipulating younger female employees, often foreign born, or low income, to engage in sexual acts with him, among themselves and with others. Defendant Panjabi's employment practices represented a pattern or practice of sexual and racial exploitation, coercion, sexual harassment and abuse against Plaintiffs and other female employees.

23. On other occasions, Defendant Panjabi used bananas, bottles and other objects as sexual toys on Plaintiffs.

24. On several occasions when Plaintiff Kufrin refused a sexual demand by Defendant Panjabi, Defendant Panjabi became angry and told Plaintiff Kufrin that "white women are lazy, stupid and garbage." He frequently said that he and his Indian investors would dominate the white trash in Spring Hill. He said, "I can do what I want because I have power and money." Defendant Panjabi told Plaintiff Kufrin repeatedly that she was "white trash" and that "white women" from Spring Hill were good for nothing other than providing sex to "powerful men."

25. Defendant Panjabi demanded that Plaintiff Kufrin have "sexual relations with a woman." Defendant Panjabi said Plaintiff Kufrin would not have to worry about "job security" if she engaged in such acts.

26. In March of 2016, Defendant Panjabi demanded that Plaintiffs have sex with each other and then with him. The Plaintiffs were thus jointly humiliated but thereafter empowered to confront Defendant Panjabi, and refuse his future demands.

27. In May of 2016, Defendant Panjabi demanded that Plaintiff Charest "give him a blow job for his birthday." Plaintiff Charest rejected the demand and complained that she was tired of being exploited, abused and threatened. After May of 2016, Plaintiff Kufrin rejected Defendant Panjabi's future sexual demands and complained to him that his conduct was illegal sexual harassment. Plaintiff Charest also rejected his demands for sex and that his conduct was illegal sexual harassment.

28. Defendant Panjabi terminated Plaintiff Charest on May 27, 2016, because she refused to have sex with him. Plaintiff Kufrin was terminated after rejecting a demand for sex by Defendant Panjabi after he asked her to meet him in a hotel room "for a blow job."

29. On June 2, 2016, Plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiffs' charges were dual filed with the Florida Commission on Human Relations ("FCHR"), pursuant to the work sharing agreement between the EEOC and FCHR. One hundred and eighty (180) days have expired since Plaintiffs filed their charges. Accordingly, Plaintiffs' claims under the FCRA have been timely commenced under Section 760.11(8).

6

## COUNT I – DISCRIMINATION AND HARASSMENT
## BECAUSE OF RACE AND NATIONAL ORIGIN (§1981)

30.    Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 29 above.

31.    This is an action for discrimination and harassment because of race and national origin under Section 1981.    Plaintiff Charest is of the Filipino race. Plaintiff Kufrin is of the white race.

32.    During Plaintiffs' employment with the Defendants, they were subjected to discrimination and harassment because of their race and national origin which affected the terms, conditions, and privileges of their employment and was of such a severe and pervasive nature so as to alter the conditions of their employment and create an abusive and hostile work environment.    The Defendants were placed on constructive and actual notice of the racial harassment, but failed to take prompt remedial action.

33.    The Defendants are directly liable for the racial harassment and discrimination because of Plaintiffs' race and national origin since the illegal conduct impaired and interfered with Plaintiffs' ability to make and enforce their employment contracts and relationships. Alternatively, the Defendants are directly liable for the racial harassment and discrimination since tangible job actions were taken against Plaintiff by Defendants by virtue of the termination of their employment contracts with the Corporate Defendant.

34.    As a result of the wrongful employment practices complained of above, Plaintiffs have been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

7

WHEREFORE, Plaintiffs demand judgment for damages against the Defendants for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, or reinstatement, together with compensatory and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Section 1981.

<u>**COUNT II – SEXUAL HARASSMENT**</u>

35.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 29 of the Second Amended Complaint.

36.     The Corporate Defendant was each Plaintiffs' "employer" as defined by the FCRA, §760.02(7).

37.     During Plaintiffs' employment with the Corporate Defendant, they were subjected to sexual harassment by Defendant Panjabi, which affected the terms, conditions, and privileges of their employment and was of such a severe and pervasive nature so as to alter the conditions of their employment and create an abusive and hostile work environment. The Corporate Defendant was placed on actual and/or constructive notice of the hostile work environment. Plaintiffs placed Defendant Panjabi on notice of their objections to the sexual harassment sustained during employment.

38.     The Corporate Defendant is liable to Plaintiffs since it failed to take prompt and effective remedial action after actual and constructive notice of the sexually hostile work environment. In addition, the Corporate Defendant is directly liable for the sexual harassment perpetrated against Plaintiffs by Defendant Panjabi due to the tangible job actions taken against them.

39.     As a result of the wrongful employment practices complained of above, Plaintiffs have been deprived of equal employment opportunity, lost earnings and benefits, have suffered emotional pain and suffering, and other harms and losses.

WHEREFORE, Plaintiffs demand judgment for damages against the Corporate Defendant for, including but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, or reinstatement, together with compensatory and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under the Florida Civil Rights Acts of 1992, sections 760.01-760.11.

## COUNT III - RETALIATION

40.     Plaintiffs reallege and incorporate herein the allegations contained in paragraphs 1 through 29 of the Second Amended Complaint.

41.     At all times material to this action, there has been in full force and effect a provision of Florida law under the FCRA that prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

42.     Plaintiffs engaged in protected opposition conduct and were protected against retaliation under the FCRA.

43.     Plaintiffs complained to Defendant Panjabi about his unwelcome sexual advances and demands for sexual contact. Plaintiffs were terminated by Defendant Panjabi because of their rejection of his sexual advances, and earlier complaints objecting to the sexual harassment.

44.     As a result of the unlawful employment practices complained of above, Plaintiffs have been deprived of equal employment opportunity, has suffered emotional pain and suffering,

9

inconvenience, mental anguish and other harms and losses.

WHEREFORE, Plaintiffs demand judgment for damages against the Corporate Defendant, for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, and/or reinstatement, together with compensatory and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Chapter 760.10, section 760.01-760.11.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiffs reallege the allegations of paragraphs 1 to 29 as if set forth fully herein.

46. Defendant Panjabi's conduct that is described in the foregoing paragraphs constitutes extreme and outrageous conduct and behavior.

47. This conduct was perpetrated by Defendant Panjabi with malice, and with the intent to cause severe emotional distress to Plaintiffs and/or in deliberate disregard of the high probability that severe emotional distress to Plaintiffs would result.

48. Defendant Panjabi maliciously embarked on a course of conduct intended to cause Plaintiffs to suffer mental and emotional distress, tension and anxiety.

49. Plaintiffs have suffered damage to their personal and community reputation and standing, have been placed under undue strain and burdens, and forced to endure extreme embarrassment. They have suffered, and will continue to suffer, great mental strain and anguish and severe emotional distress.

50. By reason of the foregoing and as a direct and proximate result of Defendant Panjabi's conduct, Plaintiffs are entitled to compensatory damages against Defendant Panjabi in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendant Panjabi and awarding compensatory damages together with any further relief that is appropriate and just.

**PLAINTIFFS REQUESTS TRIAL BY JURY ON ALL COUNTS.**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 16, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that e-mail notification of this filing was sent to: Jay P. Lechner, Jason M. Melton, Whittel & Melton, One Progress Plaza, 200 Central Avenue, Suite 400, St. Petersburg, FL 33701, lechnerj@theFLlawfirm.com, Shelley@theFLlawfirm.com, pleadings@theFLlawfirm.com and Kelly Charles-Collins, William G. K. Smoak of Smoak, Christolino & Barnett, PLLC. 320 W. Kennedy Blvd. 4th Floor, Tampa, Florida 33606 courtdocuments@flatrialcounsel.com.

/s/ Ronald W. Fraley
Ronald W. Fraley
Florida Bar No.: 0747025
The Fraley Firm, P.A.
2525 Park City Way
Tampa, Florida 33609
Primary Email: rfraley@fraleylawfirm.com
Secondary Email: phuret@fraleylawfirm.com
Telephone: (813) 229-8300
Attorney for Plaintiffs

11